01

02

03

04

05

06        UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
07                    AT SEATTLE

08  RUSS RILEY,                          )
                                         )   CASE NO. C11-5318-TSZ-MAT
09              Plaintiff,               )
                                         )
10        v.                             )   REPORT AND RECOMMENDATION
                                         )
11  MICHAEL J. ASTRUE, Commissioner of   )
    Social Security,                     )
12                                       )
                Defendant.               )
13  _____ )

14        Plaintiff Russ Riley appeals the final decision of the Commissioner of the Social

15  Security Administration ("Commissioner") which denied his applications for Disability

16  Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17  of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18  administrative law judge ("ALJ").   For the reasons set forth below, the Court recommends that

19  the Commissioner's decision be REVERSED and REMANDED for further proceedings.

20                    I.   FACTS AND PROCEDURAL HISTORY

21        Plaintiff was born in 1974, and has a seventh grade education.   (Administrative Record

22  ("AR") at 36, 106, 111, 136.)   His past work experience includes employment as a car

01  mechanic, dishwasher, horse groom, machine operator, pool helper, and laborer.  (AR at 131.)

02  Plaintiff asserts he is disabled due to mental illness, severe mood swings, and bipolar disorder.

03  (AR at 130.)  He asserts an onset date of December 31, 2002.  (AR at 106, 111.)

04      The Commissioner denied plaintiff's applications initially and on reconsideration.

05  (AR at 66-72, 74-77.)  Plaintiff requested a hearing before an ALJ which took place on August

06  3, 2009.  (AR at 29-61.)  On August 17, 2009, the ALJ issued a decision finding plaintiff not

07  disabled.  (AR at 17-28.)  Plaintiff's administrative appeal of the ALJ's decision was denied

08  by the Appeals Council (AR at 1-6), making the ALJ's ruling the "final decision" of the

09  Commissioner as that term is defined by 42 U.S.C. § 405(g).  On November 12, 2010, plaintiff

10  timely filed the present action challenging the Commissioner's decision.  (Dkt. No. 3.)

## II.  JURISDICTION

12      Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

13  405(g) and 1383(c)(3).

## III.  DISCUSSION

15      The Commissioner follows a five-step sequential evaluation process for determining

16  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it

17  must be determined whether a claimant is gainfully employed.  The ALJ found plaintiff had

18  not engaged in substantial gainful activity since December 31, 2002, the alleged onset date.

19  (AR at 19.)  At step two, it must be determined whether a claimant suffers from a severe

20  impairment.  The ALJ found plaintiff had the following severe impairments:  bipolar

21  disorder, personality disorder evidenced by intense and unstable interpersonal relationships and

22  impulsive and damaging behavior, and substance addiction disorder in current remission.  *Id.*

01 Step three asks whether a claimant's impairments meet or medically equal a listed impairment.

02 The ALJ found plaintiff did not have an impairment or combination of impairments that met or

03 medically equaled a listed impairment. (AR at 21.) If the claimant's impairments do not

04 meet or equal a listing, the Commissioner must assess residual functional capacity ("RFC") and

05 determine at step four whether the claimant has demonstrated an inability to perform past

06 relevant work. The ALJ found plaintiff had the RFC to perform the full range of work at all

07 exertional levels but with nonexertional limitations. (AR at 22.) The ALJ determined that

08 plaintiff was capable of performing his past relevant work as a stable attendant. (AR at 27-28.)

09 If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is

10 true, then the burden shifts to the Commissioner at step five to show that the claimant can

11 perform other work that exists in significant numbers in the national economy, taking into

12 consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§

13 404.1520(g), 416.920(g); *Tackett v. Apfel*, 180 F.3d 1094, 1099-1100 (9th Cir. 1999).

14 Alternatively, the ALJ also determined that plaintiff was capable of making a successful

15 adjustment to other work that exists in significant numbers in the national economy, such as

16 janitor and landscape laborer. (AR at 28.) Accordingly, the ALJ concluded plaintiff was not

17 disabled. (AR at 28.)

18 Plaintiff argues the ALJ (1) improperly evaluated the medical evidence, (2) improperly

19 evaluated his testimony, (3) improperly evaluated the lay witness evidence, (4) improperly

20 assessed his RFC, and (5) erred in finding he could return to his past relevant work. (Dkt. No.

21 14.) He requests remand for further administrative proceedings. *Id*. at 22. The

22 Commissioner argues the ALJ's decision is supported by substantial evidence and should be

01 affirmed.  (Dkt. No. 15.)   For the reasons described below, the Court agrees with the plaintiff.

02        A.   <u>Medical Evidence</u>

03        Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of

04 Lorraine Barton-Haas, M.D., Daniel A. Kodner, M.D., Jeff Bremer, Ph.D., Richard Price,

05 M.D., Jack T. Norris, Ph.D., and William Lysak, Ph.D.  (Dkt. No. 14 at 3-24.)   The

06 Commissioner disagrees and responds that the ALJ properly considered the medical evidence.

07 (Dkt. No. 15 at 5-13.)

08        In determining whether a claimant has a severe impairment, the ALJ must evaluate the

09 medical evidence and explain the weight given to the opinions of accepted medical sources in

10 the record.   The regulations distinguish among the opinions of three types of accepted medical

11 sources:   (1) sources who have treated the plaintiff; (2) sources who have examined the

12 plaintiff; and (3) sources who have neither examined nor treated the plaintiff but express their

13 opinion based upon a review of the plaintiff's medical records.   *See* 20 C.F.R. §§ 404.1527,

14 416.927; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

15        In general, more weight should be given to the opinion of a treating physician than to a

16 non-treating physician, and more weight to the opinion of an examining physician than to a

17 non-examining physician.   *Lester*, 81 F.3d at 830.   Where not contradicted by another

18 physician, a treating or examining physician's opinion may be rejected only for "'clear and

19 convincing'" reasons.   *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

20 Where contradicted, a treating or examining physician's opinion may not be rejected without

21 "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

22 *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

01        The ALJ may reject a physician's opinion "by setting out a detailed and thorough

02    summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

03    making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v.*

04    *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).   Rather than merely stating his conclusions, the

05    ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are

06    correct."  *Id.*  (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).   Although an

07    ALJ generally gives more weight to an examining doctor's opinion than to a non-examining

08    doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial

09    evidence if it is consistent with other independent evidence in the record.   *Thomas v. Barnhart,*

10    278 F.3d 947, 957 (9th Cir. 2002); *Orn v. Astrue,* 495 F.3d 625, 632-33 (9th Cir. 2007).

11            1.  <u>Lorraine Barton-Haas, M.D.</u>

12        On September 30, 2008, treating psychiatrist Dr. Barton-Haas completed a Psychiatric

13    Evaluation of the plaintiff.   (AR at 506-12.)   Dr. Barton-Haas wrote,

14        [Plaintiff] reports that he has been a heavy drinker and continues to drink daily at
            this time, three to four beers a day to help him relax and play the guitar.   He also

15        reports that he gets intoxicated about two to three times a month, usually with beer.
            He reports a history of using cocaine and methamphetamine, but discontinued more

16        than six years ago.

17    (AR at 508.)   Dr. Barton-Haas also noted plaintiff was using medical marijuana once or twice a

18    week for back pain.   (AR at 509.)   She diagnosed plaintiff with mood disorder not otherwise

19    specified ("NOS"); rule out ("r/o") bipolar II disorder; r/o intermittent explosive disorder; r/o

20    impulse control disorder NOS; generalized anxiety disorder NOS; r/o panic disorder with

21    agoraphobia; r/o post traumatic stress disorder ("PTSD"); alcohol abuse; cannabis abuse;

22    history of stimulant and hallucinogen abuse, in sustained remission; personality disorder NOS,

01  with antisocial and narcissistic traits; learning disorder NOS; and r/o borderline intellectual

02  function.  (AR at 512.)   She assigned plaintiff a Global Assessment of Functioning ("GAF")

03  score of 45, indicating "serious symptoms (e.g., suicidal ideation, severe obsessional rituals,

04  frequent shoplifting) OR any serious impairment in social, occupational, or school functioning

05  (e.g., no friends, unable to keep a job)."  AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND

06  STATISTICAL MANUAL OF MENTAL HEALTH DISORDERS (Text. Rev., 4th ed. 2000).

07       The ALJ considered the GAF score assigned to plaintiff by Dr. Barton-Haas, but

08  declined to give it much weight stating,

> In contrast to the claimant's reports to Dr. Barton that he drank 3 or 4 beers [a] day,
> on chemical dependency assessment in October 2008 he reported drinking up to 30
> beers every two days.  (Exhibit 19F/24).  Chemical dependency treatment records
> show that he was abusing cocaine when he entered treatment in March 2009
> (Exhibit 21F).  The claimant was aware that he should not use alcohol while on
> psychotropic medications.  Considering his unreported alcohol excessive alcohol
> intake, his unreported cocaine use, and his other credibility factors (for example,
> the unsubstantiated allegations of side effects from lithium and Prozac – compare
> the prison medical records, showing significant benefit from those medications),
> Dr. Barton did not have accurate information on which to based her assignment.
> Accordingly, the assessed GAF score is discounted.

15  AR at 24.

16       Plaintiff argues that the ALJ's reasons for rejecting Dr. Barton-Haas' opinion are based

17  on a misinterpretation of the medical evidence.  (Dkt. No. 14 at 5.)   Plaintiff contends that he

18  did not state that he was "drinking up to 30 beers every two days," rather, he reported "*periods

19  of daily alcohol consumption in amounts up to 30 beers every two days*."  (AR at 513,

20  emphasis added.)   He further stated that "*[w]ithin the past 30 days, he estimates consuming

21  alcohol approximately every other day with his last reported alcohol use occurring 'last

22  night*.'"   *Id*.   The Court agrees that these statements are not inconsistent with his report to Dr.

01  Barton-Haas.

02  In addition, plaintiff points out that the ALJ's statement that "[c]hemical dependency

03  treatment records show that he was abusing cocaine when he entered treatment in March 2009"

04  is also factually incorrect.   Rather, plaintiff's intake evaluation at Pioneer Center North shows

05  he reported that he last used cocaine "7 years ago."  (AR at 568.)   Accordingly, the Court

06  agrees with plaintiff that the ALJ erred in concluding that "[c]onsidering his unreported alcohol

07  excessive alcohol intake, his unreported cocaine use, and other credibility factors . . . Dr. Barton

08  did not have accurate information on which to base her assessment."  (AR at 24.)

09  The Commissioner concedes the evidence is not clear that plaintiff was abusing cocaine

10  when he entered treatment in March 2009, but argues that Dr. Barton-Haas noted plaintiff was

11  "cautious during the interview and this may affect some of the reliability of the information."

12  (AR at 506.)   He further contends that the GAF scale "'does not have a direct correlation to the

13  severity requirements in out mental disorders listings' under the Social Security Act."  (Dkt.

14  No. 15 at 7.)   He also contends that "Dr. Barton noted no functional limitations – thus, her

15  opined GAF score was based on Plaintiff's symptoms," and should not be considered.  *Id*.

16  Although the Commissioner offers several reasons that could justify rejecting Dr.

17  Barton-Haas' opinion, the fact remains that these were not the reasons cited by the ALJ.   The

18  Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the

19  ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been

20  thinking."  *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citations omitted).

21  On remand, the ALJ should reevaluate Dr. Barton-Haas' opinion and its affect on plaintiff's

22  RFC assessment.

01          2.  <u>Daniel A. Kodner, M.D.</u>

02          On July 10, 2007, treating psychiatrist Dr. Kodner completed a Psychiatric Evaluation

03 of the plaintiff.  (AR at 542-46.)  Dr. Kodner noted that plaintiff had "a long pattern of

04 affective dysregulation with intense anger outburst, behavioral dyscontrol and impulsivity,

05 antisocial behavior, and unstable relationships."  (AR at 545.)  He noted plaintiff's insight and

06 judgment were chronic impairments.  *Id.*  He diagnosed plaintiff with r/o bipolar II disorder,

07 currently hypomanic; r/o bipolar I disorder; r/o substance-induced mood disorder; alcohol

08 abuse, r/o alcohol dependence; cannabis abuse, r/o dependence; history of cocaine dependence;

09 r/o impulse control disorder NOS; r/o intermittent explosive disorder; personality disorder

10 NOS; antisocial and narcissistic traits are prominent.  (AR at 545-46.)  Dr. Kodner assigned

11 plaintiff a GAF score of 45.  (AR at 546.)

12          The parties are in agreement that the ALJ failed to address Dr. Kodner's opinion.  (Dkt.

13 No. 14 at 6; Dkt. No. 15 at 8.)  The Commissioner argues that this should be considered

14 harmless error and proffers reasons not set forth in the ALJ's decision as to why Dr. Kodner's

15 opinion should be dismissed.  (Dkt. No. 15 at 9.)  However, the ALJ is required to discuss

16 reasons for rejecting a treating physician's opinion, and the Court may not affirm the ALJ's

17 decision based on reasoning the ALJ did not cite.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d

18 1050, 1055-56 (9th Cir. 2006).  The ALJ is directed to evaluate Dr. Kodner's opinion on

19 remand.

20          3.  <u>Jeff Bremer, Ph.D</u>.

21          Dr. Bremer completed two Department of Social and Health Services ("DSHS")

22 psychological evaluations of the plaintiff.  (AR at 364-71, 445-52.)  On August 29, 2006, he

01  diagnosed plaintiff with bipolar disorder, personality disorder NOS with borderline and

02  antisocial features (provisional), and polysubstance abuse in reported remission.  (AR at 365.)

03  He opined that plaintiff had "marked" limitations in several social factors, noting that plaintiff

04  had extremely poor social skills, including stress tolerance, and could be highly inappropriate

05  depending on his mood or situation.  (AR at 366.)  On October 2, 2007, Dr. Bremer opined

06  plaintiff had "marked" and "severe" limitations in social factors, noting that plaintiff was highly

07  volatile and could quickly become violent.  (AR at 447.)

08         The ALJ gave limited weight to Dr. Bremer's opinion because he was unaware that

09  plaintiff continued to abuse substances throughout the period at issue.  (AR at 23.)  He also

10  discounted Dr. Bremer's assessments to the extent he relied on plaintiff's subjective complaints

11  in forming his opinions, which the ALJ found not credible.  *Id*.  These are specific and

12  legitimate reasons for rejecting Dr. Bremer's opinions.

13         Plaintiff argues this was not a legitimate reason for rejecting plaintiff's opinion because

14  the ALJ was basing his analysis on his false assumption that plaintiff had "ongoing substance

15  abuse."  (Dkt. No. 14 at 8.)  As the Commissioner points out, however, plaintiff fails to

16  acknowledge he was abusing alcohol at the time.  When asked about alcohol or drug abuse, Dr.

17  Bremer wrote in 2006, "by history, yes," "by history, not now," and in 2007, "No, claims no

18  drugs, some alcohol."  (AR at 365, 366, 446, 447.)  However, the record shows plaintiff

19  acknowledged using alcohol at the time.  (AR at 406, 513, 543, 557, 562, 568.)  An ALJ may

20  give less weight to an opinion that is inconsistent with other evidence in the record.  *Batson v.*

21  *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Dr. Bremer's evaluations

22  indicate he was unaware of plaintiff's ongoing alcohol abuse.  (AR at 508, 513.)

01     In addition, an ALJ may reject a physician's opinions that are predicated on a claimant's

02  self-reports that have been properly discounted as incredible.  *Morgan v. Comm'r Soc. Sec.*

03  *Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir.

04  1989)).  As indicated below, the ALJ properly discounted plaintiff's testimony.  The ALJ did

05  not err in giving limited weight to Dr. Bremer's opinions.

06              4.  <u>Richard Price, M.D.</u>

07     On January 3, 2007, six months after plaintiff's release from prison, Dr. Price

08  performed a psychiatric evaluation.  (AR at 377-81.)  He diagnosed plaintiff with bipolar

09  disorder, polysubstance abuse, r/o dependence, in remission, and antisocial personality

10  disorder, with a GAF score of 50.  (AR at 380.)  He stated that plaintiff's "principle problem

11  seems to be strong antisocial personality traits."  (AR at 380.)  He opined that plaintiff had the

12  ability to perform simple and repetitive tasks in an indirectly supervised position, noting "[h]is

13  major difficulty seems to be getting along with others."  (AR at 380-81.)  He also opined

14  plaintiff would likely have difficulty interacting with co-workers and the public.  (AR at 381.)

15  Dr. Price stated, "In a position with indirect supervision, he probably would be able to perform

16  activities consistently and maintain regular attendance in the workplace."  *Id*.  He

17  recommended psychotropic medications, commenting that "I suspect without some

18  symptomatic control, he will continue to bounce from job to job and perhaps from incarceration

19  to incarceration."  (AR at 380.)

20     The ALJ noted that plaintiff "was abusing substances throughout much of the period at

21  issue."  (AR at 24.)  The ALJ found that when plaintiff is abstinent, his mental status

22  examination findings are normal, as evidenced by his prison records and his records from

01 Pioneer Center North, where plaintiff completed a sixty-day inpatient treatment program.   (AR

02 at 24, 203-363, 563-89.)   The ALJ accepted Dr. Price's opinion that plaintiff can consistently

03 perform unskilled work, "but not that he requires indirect supervision."   (AR at 24.)

04      Plaintiff again argues that the ALJ's analysis is based on the incorrect assumption that

05 he was abusing substances throughout much of the period at issue.   (Dkt. No. 14 at 9.)   He

06 contends that he reported to Dr. Price that he was abstinent from alcohol at the time, and there is

07 no evidence to the contrary.   *Id.*   However, as the Commissioner points out, during an intake

08 assessment for Behavioral Health Resources ("BHR") in December 2006, plaintiff admitted

09 using alcohol "in the past 12 months."   (AR at 406.)   In addition, plaintiff acknowledged he

10 was untruthful about his alcohol use during a March 2009 assessment, "he admitted that his

11 counselors at BHR had no idea he was consuming alcohol while in treatment."   (AR at 557.)

12 Accordingly, the ALJ properly considered evidence of plaintiff's substance abuse, including

13 alcohol, during the period when Dr. Price evaluated him.

14      In addition, the ALJ reasonably found Dr. Price's conclusions were inconsistent with

15 medical evidence which showed plaintiff's mental status exams were within normal limits

16 when he was abstinent.   (AR at 340, 342, 346, 348-50, 563-64.)   The ALJ's reasons for

17 rejecting Dr. Price's opinions are specific and legitimate and supported by substantial evidence

18 in the record.   As such, the ALJ did not err in evaluating the opinion of Dr. Price.

19           5.  <u>Jack T. Norris, Ph.D.</u>

20      On September 23, 2008, Dr. Norris performed a DSHS psychological evaluation of

21 plaintiff.   (AR at 480-89.)   He diagnosed personality disorder NOS, mood disorder NOS,

22 polysubstance abuse in sustained full remission, and active alcohol abuse.   (AR at 481.)   He

01 indicated that plaintiff's substance and alcohol abuse did not contribute to his mental

02 impairments, and stated that plaintiff used alcohol and drugs to self-medicate. (AR at 481-82.)

03 He opined that plaintiff had "marked" social limitations, noting plaintiff's activities of daily

04 living, history, testing, and clinical observations. (AR at 482.) He also noted that plaintiff

05 "has paranoid tendencies, has easily triggered memories of trauma, has poor anger control, and

06 is currently abusing alcohol." *Id*.

07 The ALJ rejected Dr. Norris' opinion that plaintiff's substance and alcohol abuse did

08 not contribute to his mental impairments, finding his conclusion was contradicted by the prison

09 medical records and the chemical dependency treatment records which showed plaintiff's

10 mental status examination findings improved with abstinence. (AR at 25.) The ALJ also

11 discounted Dr. Norris' opinion to the extent he relied on plaintiff's subjective complaints. *Id*.

12 Plaintiff argues that the fact that he had on several occasions better mental status

13 examination findings is not a legitimate reason to reject Dr. Norris' opinion. (Dkt. No. 14 at

14 10-11.) The Court disagrees. As the Commissioner argues, the fact that plaintiff's mental

15 impairments improved with abstinence directly contradicts Dr. Norris' opinion that plaintiff's

16 active alcohol abuse did not contribute to his mental impairments. (AR at 340-46, 348-50,

17 563-64.) An ALJ may properly reject an opinion that is conclusory and inconsistent with the

18 record. *See generally Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999); *Young v.*

19 *Heckler*, 803 F.2d 963, 968 (9th Cir. 1986).

20 In addition, an ALJ may reject a doctor's opinion that is based on a claimant's

21 subjective complaints that have been properly discounted as incredible. *Morgan*, 169 F.3d at

22 602. As indicated below, the ALJ properly discounted plaintiff's testimony. The ALJ did not

01  err in rejecting Dr. Norris' opinions that were based, in part, on plaintiff's self-reports.

02         6.  <u>William Lysak, Ph.D</u>.

03        On January 8, 2007, State agency psychologist Dr. Lysak reviewed the record and

04  completed a Mental Residual Functional Capacity Assessment ("MRFC") of the plaintiff.

05  (AR at 396-98.)  In Section I, titled "Summary Conclusions," Dr. Lysak indicated plaintiff was

06  "markedly limited" in his ability to work in coordination with or proximity to others without

07  being distracted by them, interact appropriately with the general public, and get along with

08  coworkers or peers without distracting them or exhibiting behavioral extremes.  (AR at

09  396-97.)  He also assessed several moderate limitations under understanding and memory,

10  concentration and persistence, social interaction, and adaption.  *Id*.

11        In Section III, titled "Functional Capacity Assessment," Dr. Lysak opined that plaintiff

12  retained the capacity for "simple tasks for a normal work day/week with occasional interruption

13  from psychiatric symptoms." (AR at 398.)  Dr. Lysak also opined that plaintiff would "be able

14  to handle limited public contact," and "would be able to perform work activities consistently in

15  a position with indirect supervision."  *Id*.  He concluded that plaintiff had the "ability to meet

16  his basic adaptive needs."  *Id*.  The ALJ adopted Dr. Lysak's assessment, finding it

17  "consistent with the record as a whole."  (AR at 24.)

18        Plaintiff argues that although the ALJ adopted Dr. Lysak's assessment, he failed to

19  include in his RFC assessment all of the marked and moderate limitations described by Dr.

20  Lysak in Section I of the MRFC.  (Dkt. No. 14 at 11-12.)  However, as explained in the

21  agency's Program Operations Manual, an ALJ properly focuses on the "narrative" portion of

22  the MRFC form, rather than the "Summary Conclusions" portion.  *See* Program Operations

01  Manual System ("POMS") DI 25020.101(B)(1).   The POMS provides,

> The purpose of section I ("Summary Conclusion") on the SSA-4734-F4-SUP is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis.   **It is the narrative** written by the psychiatrist or psychologist **in section III** ("Functional Capacity Assessment") of form SSA-4734-F4-SUP **that adjudicators are to use as the assessment of RFC**.  Adjudicators must take the RFC assessment **in section III** and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work.   This must be done carefully using the adjudicator's informed professional judgment.

09  *Id.*  It is clear that the ALJ acted in accordance with the agency's established procedures when

10  he relied on the narrative portion of Dr. Lysak's opinion set forth in the Functional Capacity

11  Assessment rather than on the limitations recorded in the Summary Conclusions section.

12  Accordingly, the ALJ properly evaluated Dr. Lysak's opinion.

13                    7.  <u>New Medical Evidence</u>

14        Plaintiff argues that additional evidence submitted to the Appeals Council, but not

15  reviewed by the ALJ, supports remand of plaintiff's disability claims for a new hearing.   (Dkt.

16  No. 14 at 12-13.)   Specifically, he argues that a psychological evaluation performed by Terilee

17  Wingate, Ph.D., on December 10, 2010, combined with the other medical evidence of record,

18  shows that the ALJ's decision is not supported by substantial evidence and is based on legal

19  error.   *Id.* at 12.

20        It is clear that the ALJ did not err in failing to consider this evidence, as it was not before

21  him when he issued his decision.   This additional evidence was submitted by plaintiff to the

22  Appeals Council following the ALJ's August 17, 2009, decision.   (AR at 594-606.)   After

reviewing the additional evidence, the Appeals Council concluded that it did not provide a basis

for reversing the ALJ's decision. (AR at 2.)  Nevertheless, plaintiff requests that the Court

consider it now in determining whether the ALJ's decision is supported by substantial evidence.

(Dkt. No. 14 at 12-13.)

The Ninth Circuit has recently held that the Court may consider additional evidence

submitted to the Appeals Council for the purposes of determining "whether, in light of the

record as a whole, the ALJ's decision was supported by substantial evidence and was free of

legal error." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011)

(citing *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993)).  Here, however, the Court does

not have to decide whether Dr. Wingate's psychological evaluation would justify a remand.

Because this matter is being remanded, and these materials are part of the record, the ALJ

should consider Dr. Wingate's evaluation as part of his reevaluation of the medical evidence.

B.  Credibility

Plaintiff argues that the ALJ erred in finding his testimony not credible.  (Dkt. No. 14 at

13-18.)  According to the Commissioner's regulations, a determination of whether to accept a

claimant's subjective symptom testimony requires a two step analysis.  20 C.F.R. §§ 404.1529,

416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (1996); SSR 96-7p.  First, the ALJ must

determine whether there is a medically determinable impairment that reasonably could be

expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*,

80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment,

the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely

because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d

341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722. Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Id*. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Id*.

In this case, there was no evidence that plaintiff was malingering. Consequently, the ALJ was required to provide clear and convincing reasons to reject his testimony. As stated by the ALJ, plaintiff testified that "he had not used alcohol or drugs since he was in the inpatient chemical dependency program. He reported problems with depression, anger, and anxiety. He described losing jobs because of conflicts. He also testified that he has concentration problems and problems completing tasks." (AR at 26.) The ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible. *Id*.

1. Physical Impairments

First, the ALJ found plaintiff's pain allegations were less than credible because objective imaging studies did not document arthritis and degenerative disc disease, and because his allegations were "notably inconsistent." (AR at 26.) For example, plaintiff's prison

01 health records from 2002 to 2006 noted plaintiff to be in good physical condition, with no

02 diagnosis other than a thyroid disorder.  (AR at 20, 26, 323.)  Likewise, health records from

03 Providence Rochester Medical Center in October 5, 2006, stated that plaintiff "denies history of

04 any back or neck problems.  He has never had any broken bones or surgeries.  No history of

05 arthritis."  (AR at 20, 26, 374.)  However, in 2007, plaintiff alleged chronic neck and back

06 pain for the past five to ten years.  (AR at 20, 26, 431-32, 454.)  Examination findings were

07 normal except for tenderness to palpitation.  (AR at 20, 428, 440, 442-43, 454.)  In addition,

08 plaintiff was referred to physical therapy but was discharged due to poor attendance.  (AR at

09 20, 26, 456-57.)

10 Substantial evidence supports the ALJ's finding that plaintiff's allegations of chronic

11 pain were inconsistent with clinical and objective findings.  Inconsistencies such as this can be

12 properly used by the ALJ to find a claimant not credible.  *Batson*, 359 F.3d at 1196-97.  The

13 ALJ did not err in finding plaintiff's pain allegations not credible.

14 2.  Inconsistent Statements Regarding Alcohol and Drug Use

15 Second, the ALJ found plaintiff's inconsistent statements about his alcohol and drug use

16 negatively affected his credibility.  (AR at 26.)  As discussed above, plaintiff gave different

17 reports to different evaluators and health care providers.  For example, during a March 2009

18 assessment, plaintiff "admitted that his counselors at BHR had no idea he was consuming

19 alcohol while in treatment."  (AR at 557.)  Although plaintiff argues that he "did inform BHR

20 of his alcohol use and he requested inpatient treatment," the medical record shows that during

21 the first six months of his treatment at BHR, plaintiff admitted to only "occasional

22 self-medicating with alcohol."  (AR at 413, 400-15, 490-52.)  Moreover, none of his

01  providers at BHR were informed of the <u>amount</u> that he consumed (a fifth of whiskey and beer

02  on a daily basis.)  (AR at 406, 508, 513, 528, 543, 556, 561.)  The ALJ properly considered

03  plaintiff's inconsistent statements regarding his alcohol use when evaluating his credibility.

04  *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (holding the ALJ properly relied on

05  inconsistent statements regarding the claimant's drinking as a basis to reject his testimony).

06          However, substantial evidence does not support the ALJ's conclusion that plaintiff's

07  statements regarding his drug use have been inconsistent.  The ALJ states that plaintiff

08  reported to Dr. Barton-Haas in September 2008 that he had not used cocaine or

09  methamphetamines for more than six years, and he told Dr. van Dam in March 2009 that he had

10  not used drugs for many years.  (AR at 26, 508, 557.)  However, the ALJ notes that his

11  diagnoses at Pioneer Center North, where he received inpatient treatment in 2009, included

12  "cocaine dependence with psychological dependence."  (AR at 26, 563.)  But, as plaintiff

13  points out, his diagnosis of cocaine dependence with psychological dependence was based on

14  his history of cocaine use, not ongoing use.   Other records from Pioneer Center North indicate

15  that plaintiff's last cocaine use was "7 years ago."  (AR at 568.)  Accordingly, the Court

16  agrees with plaintiff that the ALJ erred in concluding that plaintiff gave inconsistent statements

17  regarding his cocaine use when evaluating his credibility.

18          The ALJ also noted that plaintiff has a history of marijuana abuse and managed to

19  obtain authorization to possess marijuana for medical purposes.  (AR at 26.)  The ALJ found

20  plaintiff's chemical dependency counselor did not regard his medical marijuana use as

21  medically necessary, as evidenced by the counselor's comment in February 2009 that "[h]is

22  time here has been productive (as he has discontinued his use of marijuana)."  (AR at 490.)

01        It is unclear how plaintiff's medical marijuana use affects his credibility.  Although

02  plaintiff's counselors apparently discouraged his marijuana use, they were aware that he used

03  marijuana, and the record contains documentation of medical authorization to possess

04  marijuana for medical purposes in Washington State.  (AR at 490, 493, 513.)  Because

05  plaintiff had medical authorization to possess and use medical marijuana for medical purposes,

06  the ALJ's conclusion that plaintiff's marijuana use negatively impacts his credibility is

07  rejected.  Nevertheless, the ALJ properly considered plaintiff's inconsistent statements

08  regarding his alcohol use when evaluating his credibility.

09        3.   <u>Inconsistent Statements Regarding the Side Effects of Medication</u>

10        The ALJ also found that plaintiff's statements regarding the side-effects of Prozac and

11  lithium were inconsistent.  (AR at 26.)  While in prison, plaintiff reported that "the Prozac and

12  lithium makes him feel whole," and that "this is the first time he feels normal."  (AR at 348.)

13  He also stated that he slept and ate well.  *Id*.  After his release from prison, plaintiff sought

14  refills of Prozac and lithium.  (AR at 433.)  However, on January 3, 2007, he reported to Dr.

15  Price that he was tried on lithium, Prozac, Depakote, Depakene, and Sinequan, but that "he got

16  toxic on lithium."  (AR at 378.)  He also reported to BHR counselors that he was treated with

17  lithium and Depakote while in prison, but that the "meds didn't work."  (AR at 413.)  In

18  September 2008, plaintiff told Dr. Barton-Haas that Prozac made him hyper and lithium made

19  him toxic and caused him to hallucinate.  (AR at 507.)  Dr. Barton-Haas subsequently noted

20  in February 2009 that plaintiff had a very good response to Prozac, with decreased anger and

21  impulsivity.  (AR at 492-93.)  The ALJ did not err in finding plaintiff's various statements

22  regarding the side effects from his psychotropic medications were not consistent.  *Smolen*, 80

01 F.3d at 1281.

02     4.  <u>Inconsistent Test Results</u>

03     Finally, the ALJ found inconsistencies in plaintiff's "symptom validity testing" and

04 "intelligence testing" on evaluation with Dr. Carla van Dam undermined his credibility.  (AR

05 at 25, 26, 553-62.)  Dr. van Dam noted that "[s]ymptom validity testing was administered, with

06 Mr. Riley endorsing multiple difficulties in memory and cognitive as well as emotional

07 problems that are inconsistent with those individuals who have such conditions."  (AR at 559.)

08 In addition, plaintiff's performance on intelligence testing was inconsistent.  (AR at 559-60.)

09 Dr. van Dam noted "[w]hile he appeared focused and seemed to attend to test items, he was also

10 quite quick to give up on some items, and on other subtests he seemingly could not manage the

11 simple tasks yet did some of the more complex tasks without difficulty."  (AR at 559-60.)  For

12 these reasons, Dr. van Dam suggested plaintiff's test scores may understate his actual

13 competence and/or potential.  (AR at 560.)  The ALJ properly found that inconsistencies in

14 psychological testing identified by the examining psychologist diminished plaintiff's

15 credibility.  *Thomas*, 278 F.3d at 958-59 (finding that failure to give maximum or consistent

16 effort during physical capacity evaluation supported the ALJ's credibility determination).  The

17 ALJ did not err in making an adverse credibility assessment.

18     The foregoing reasons offered by the ALJ to justify his adverse credibility

19 determination are sufficiently clear and convincing and supported by substantial evidence in the

20 record.  The ALJ permissibly discounted plaintiff's pain allegations as inconsistent with the

21 clinical and objective findings.  In addition, the ALJ permissibly discounted plaintiff's

22 testimony regarding his mental limitations based on inconsistent statements regarding his

01 alcohol use, inconsistent statements regarding the side effects of medication, and

02 inconsistencies in psychological test results. The ALJ did not err, and his adverse credibility

03 determination must be affirmed.

04        C. <u>Lay Witness Testimony</u>

05       Plaintiff argues that the ALJ erred in evaluating the lay witness evidence of his brother,

06 Ethan S. Riley, and his wife, Connie Riley. (Dkt. No. 14 at 18-19.) In order to determine

07 whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by

08 spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d). Lay witness testimony

09 as to a claimant's symptoms or how an impairment affects ability to work is competent

10 evidence that cannot be disregarded without comment. 20 C.F.R. §§ 404.1513(d)(4),

11 416.913(d)(4); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). To discount lay witness

12 testimony, the ALJ must "provide reasons germane to each witness." *Id.*

13       Plaintiff's brother completed a third-party report form on October 19, 2006. (AR at

14 154-62.) He reported that plaintiff's mental anxiety stopped him from sitting still, talking, or

15 listening. (AR at 159.) He also reported that plaintiff had difficulty following written

16 instructions stating, "Average person 1 hr task, Russ a day maybe two." (AR at 159.)

17       The ALJ found plaintiff's "work activity in prison contradicts that report." (AR at 27.)

18 In addition, the ALJ found that Mr. Riley seemed unaware of plaintiff's alcohol and drug use.

19 *Id.* "For those reasons, and . . . given the claimant's general lack of credibility," the ALJ gave

20 little weight Mr. Riley's report. *Id.*

21       The ALJ gave inadequate reasons for discounting Mr. Riley's report. The ALJ rejected

22 the report as inconsistent with plaintiff's work activity in prison, but did not identify any

specific inconsistencies. (AR at 27, 203-363.) Rather, plaintiff's prison records indicate only that he was "medically cleared for: All Work Assignments" (AR at 257), denied work assignments (AR at 258), "job assignment is Inside Grounds" (AR at 330), "Refusing to Work" (AR at 331), and "currently housed in Confinement, under investigation and is not assigned a job at this time" (AR at 340). (AR at 257-58, 330-31, 340.) The ALJ also rejected Mr. Riley's report because he *appeared* to be unaware of plaintiff's alcohol and drug use. (AR at 27.) However, Mr. Riley's report does not indicate whether he was aware plaintiff was using drugs and alcohol or not. Accordingly, the ALJ's reason is based on speculation and conjecture and is not a germane reason for giving his report little weight. Moreover, as indicated above, there is no evidence that plaintiff continued to abuse drugs after he was released from prison. Finally, an ALJ cannot reject lay testimony simply by rejecting the credibility of the claimant. *See Dodrill*, 12 F.3d at 918-19 (holding that lay witnesses are competent to make independent observations of a claimant's symptoms and daily activities, and to testify as to her condition).

The Commissioner argues that Mr. Riley's report is inconsistent with the opinions of Dr. Lysak and Dr. Price. (Dkt. No. 15 at 18.) The Commissioner's *post hoc* explanation, even if correct, is insufficient to cure the ALJ's error. *See, e.g., Ceguerra v. Sec'y of Health & Human Serv.*, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency."). If the ALJ wishes to discount the testimony of lay witnesses, the ALJ, not the Commissioner, must provide specific reasons that are germane to each witness. *Dodrill*, 12 F.3d at 919. On remand, the ALJ should reevaluate the weight given to plaintiff's brother's report.

01      Plaintiff's wife also completed a third-party report form on August 1, 2009.  (AR at

02   195-99.)  She reported that plaintiff could "flip in anger" over the littlest things, had prior

03   drug-induced flashbacks, hallucinated, and was afraid to leave the house alone.  (AR at 195.)

04   She stated that plaintiff "[d]oes not sit still.  He is always fidgeting with fingers constantly

05   adjusting back or moving."  (AR at 196.)  She noted that simple driving directions confused

06   him, and that he did not do well around other people.  (AR at 197.)  She stated that "[f]rom the

07   time I met him until now there has been no positive change."  (AR at 198.)

08      The ALJ rejected Mrs. Riley's third-party report as inconsistent with the evidence of

09   record.  (AR at 27.)  For example, the ALJ noted there was no documentation in the medical

10   record of drug-induced flashbacks.  *Id*.  The ALJ also noted that while Mrs. Riley reported

11   plaintiff was unable to follow simple driving directions, plaintiff demonstrated the ability to

12   perform simple instructions.  (AR at 27, 197, 381, 559.)  In addition, the ALJ pointed out the

13   medical evidence shows that plaintiff's mental examination findings improved with medication

14   and abstinence.  (AR at 27, 492-93, 563-89.)

15      It may be improper for an ALJ to reject lay witness evidence as unsupported by medical

16   evidence.  *Bruce v. Astrue*, 557 F.3d 1113, 1115-16 (9th Cir. 2009).  However, an ALJ may

17   properly reject lay witness evidence that conflicts with other evidence in the record.  *Lewis v.*

18   *Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2002) (identifying inconsistencies between such

19   statements and the record when looked at as a whole is sufficient).  The ALJ did not err.

20      D.  <u>Residual Functional Capacity</u>

21      At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and

22   assess his work-related abilities on a function-by-function basis, including a required narrative

01 discussion.   20 C.F.R. §§ 404.1545, 416.945.   RFC is the most a claimant can do considering

02 his or her limitations or restrictions.   SSR 96-8p.   The ALJ must consider the limiting effects

03 of all plaintiff's impairments, including those that are not severe, in determining RFC.

04         As discussed above, the ALJ erred in his assessment of the medical evidence requiring

05 remand.   Accordingly, on remand, after properly evaluating the medical evidence, the ALJ will

06 reevaluate plaintiff's RFC.   If the ALJ's RFC assessment is revised, the ALJ will conduct a

07 new step four analysis and, if necessary, a step five analysis that incorporates any changes in

08 plaintiff's RFC.   At step five, the ALJ will also call a vocational expert ("VE") to testify about

09 jobs that may exist with a properly framed hypothetical that incorporates all of plaintiff's

10 limitations.

## V.   CONCLUSION

12         For the foregoing reasons, the Court recommends that the Commissioner's decision be

13 REVERSED and REMANDED for further administrative proceedings not inconsistent with the

14 Court's instructions.   A proposed order accompanies this Report and Recommendation.

15         DATED this 7th day of February, 2012.

Mary Alice Theiler
United States Magistrate Judge